# WINDHAM COUNTY.

## FEBRUARY TERM, 1835.

PRESENT, HON. CHARLES K. WILLIAMS, *Chief Justice.*
    "   "   SAMUEL S. PHELPS, ⎱ *Assistant Justices.*
    "   "   JACOB COLLAMER, ⎰

WHITE *vs.* YAW AND GILLET.

(*In Chancery.*)

WINDHAM,
February,
1835.

All the equity which entitles a person to relief, should be stated in his bilḷ

Where a party wholly fails to perform a contract, by the time stipulated, and gives no reasonable excuse therefor, he cannot require a specific performance of the other party, by an offer to fulfil on his part, after the time.

A statement of the case will be found incorporated into the opinion of the court, and the argument of counsel.

*J. Phelps for defendant.*—The bill states that the plaintiff made a contract with one John Noyes, to purchase of him a tract of land;—that he was to pay $210 for the same;—that he paid Noyes in hand $34;—that the plaintiff applied to Yaw to borrow $176, part of the $210;—that Yaw executed his note to Noyes for the same, and the plaintiff thereupon gave two notes to Yaw of $88 each, each dated the 29th September, 1827—one of which was payable in one year, and the other in two years from the date, with interest;—that for the purpose of securing the pay of said notes to Yaw, Noyes, by the agreement of the parties, executed the deed to Yaw; and Yaw thereupon gave his penal bond to White, conditioned that said bond should be void, if, upon the payment of said notes by White, Yaw should procure a good and sufficient deed of the land to White;—that White thereupon went into possession, and hoped Yaw would have accepted the money and executed a deed. The bill charges that Yaw refuses to receive the amount, and to execute a deed. And because the ora-

WINDHAM,
*February,*
1835

White
*vs.*
Yaw *et al*

tor did not pay, Yaw commenced an action of ejectment on or about the 1st of June, 1830 ;—that orator could make no defence at law ;—that Yaw recovered judgment, and entered upon said land under a writ of scisin ;—that he put Gillet into possession, with notice of orator's equitable right ;—that Yaw refuses to come to account ;—that he still holds the notes—Prays that an account may be taken, and that upon payment of principal, &c. (*White, the orator, is ready and offers to make, and to that end will bring the money into court, when your honors shall order and direct,*) that Yaw may give up said notes to be cancelled, surrender the possession, and make a deed to orator. To this complaint the defendant pleads a general demurrer.

The plaintiff appears to treat this case as if it were a question of " real estate granted upon condition, by deed of mortgage or bargain and sale with defeasance." It is neither. The plaintiff never owned the land,—never had a deed of it,—never had a legal or equitable interest in it. His interest was personal and unconditional merely. All he shows is a penal bond for a deed ; and as a condition precedent to which it became his duty to pay the money before he can ask for a deed, or forfeiture of the bond. This is all the contract or privity between these parties that he shows. This court cannot alter, or make contracts for parties. It cannot change a mere *contract for* a deed into *a* deed of mortgage, or of bargain and sale with defeasance. This contract, in its legal and equitable effects, must stand as the parties left it. Then how did they leave it ? What were the respective rights and duties of the parties ? And what their remedies ? Clearly then, on the 29th of September, 1829, or within a *reasonable time* thereafter, it became the duty of White to pay, or offer to pay to Yaw, the amount of the notes, and request a deed. It would then have been Yaw's duty to accept the money, and offer a deed. If he refused, White might then bring his bill, not to redeem an estate which he had granted with a defeasance, for he had no such estate ; but for a *specific performance of a contract.* This bill then being brought professedly to redeem a supposed estate in nature of a mortgage, does not apply to the case. But even if it did—if the bill were in fact brought to compel a specific performance of the contract set forth in the bill, the case which he shows, does not entitle him to a decree. Here the payment of the notes by the plaintiff was made a condition precedent to the conveyance by the defendant.—*Morton* vs. *Lamb,* 7 T. R. 125.

In equity as well as law, the plaintiff is bound to allege and show

WINDHAM,
February,
1835.
White
vs.
Yaw et al.

that he has paid or offered to pay the notes in question, and requested a deed, before he is entitled to a conveyance, or to a deed for one; and this rule applies as well to a case of mortgage, as to that of a specific performance. An allegation "that he is ready and offers to make payment, and to that end will bring the money into court when the court shall order and direct," is in effect just saying that he will abide such decree as the court shall finally make, if in his power. But that is far from saying that he had paid or offered to pay the notes when due, or before he brought his bill. The bill then should be dismissed, if for this cause only.— But if the party had in fact performed his condition, and had so alleged it, he has not shown himself otherwise entitled to a decree. Because equity will not decree a specific performance of a contract where there has been an unreasonable delay or neglect on the part of the applicant.—2 Sw. Dig. 27. 1 John. Chan. Cas. 370. 4 John. Chan. Cas. 559.

But here there has been not only unreasonable neglect and delay on the part of the plaintiff, but that delay and neglect has operated greatly to the damage, cost and injury of the defendant; and he now absurdly places his prayer for relief on the ground only that he has thus unreasonably delayed the defendant, and unjustly harrassed him. He shows by his bill, that when the notes fell due, he was in possession of the land by permission of the defendant;— that he neglected to pay or offer to pay;—that he still held over from September till the June following, when still refusing to pay, the defendant was compelled to commence an ejectment against him to recover the possession of the premises. How long he harrassed the plaintiff in ejectment, before he could obtain a judgment against him, he is careful not to state. To that end, no doubt, he availed himself of all the means the law would give him for delay, which would be until April Term, 1831.—Not one word said about paying or offering to pay all this time: and then goes out of possession on a writ of seisin, at the defendant's expense. With all this cost to the defendant, together with the great and valuable improvements the defendant has caused to be made on the land which he thus occupied for more than three years: and more than five years after the last note fell due, the plaintiff now brings his bill for a specific performance; or in other words, to obtain a deed and possession of the land, without even pretending that he has ever paid, or offered to pay one cent upon his notes to this day. This is certainly most unreasonable delay, as well as unjust and inequitable

WINDHAM,
February,
1835.
—————
White
vs.
Yaw et al.

treatment of the defendant, by the applicant, after which he cannot be relieved.

But it is said that the defendant still holds the notes against the plaintiff, and may collect them. In answer to this, it may be seen that it is not alleged that the plaintiff has requested the defendant to deliver and cancel the notes. And besides, the taking possession of the land by the defendant, under his writ of seisin, is by operation of law an extinguishment of the notes.—2 Swift, 198.

Again, an agreement may be resisted on the ground of a parol waiver, or waiver by act of the parties.—2 Swift, 27. 17 Vesey, 356.

The bringing of the ejectment by the defendant—the refusal to pay the notes by the plaintiff, but suffering judgment and surrendering possession of the land to the defendant, two years after the notes became due, and an acquiescence therein till that time, is in legal effect a waiver of the agreement by the acts of the parties themselves.

*R. M. Field, for orator.*

The opinion of the court was delivered by

WILLIAMS, Chancellor.—It appears in this case, that in September, 1827, the orator made a contract with John Noyes, to purchase a certain tract of land, for which the orator was to pay $210;—that he paid $34, and the defendant, Yaw, paid the balance (being $176) for the orator, who thereupon gave Yaw two notes of $88 each, payable in one and two years;—that Noyes executed a deed to Yaw, and Yaw executed a bond to the orator, conditioned to deed to him, upon his paying the notes aforesaid;—that the orator went into possession—made improvements and betterments to the value of $500;—that Yaw, on the 1st of June, 1830, commenced an action of ejectment, recovered judgment, and took possession by virtue of a writ of seisin;—that the other defendant, Gillet, in consequence of some agreement with Yaw, went into possession;—that Yaw still holds the notes, which the orator is willing to pay, after deducting rents and profits; and praying that the defendants may be decreed to deed the land aforesaid to the orator, on receiving the amount due.

To this bill there is a general demurrer. As the orator never had a legal title in the land, he cannot be considered as a mortgagor entitled to redeem. The equitable interest which he has in the land, arises from his paying the sum of thirty-four dollars, from the

WINDHAM,
February,
1835.

White
vs.
Yaw et al.

bond of defendant, and his being put into possession. He could have secured a legal title, by performing the condition, not as in case of a mortgagor, but by compelling defendant to a specific performance. He had no remedy at law on the land, without a strict performance at the day. In consequence of his failure, he forfeited his claim under the bond. But equity, in a proper case, can relieve against a forfeiture, particularly where a compensation can be made, and it can be done with safety to the other party, and this even where time is made of the essence of the contract, and there is a default at the day. If there is a reasonable and just excuse, or the delay has been acquiesced in by the other party, equity may relieve. But it will not and ought not to interfere, where no attempt is made by the party to perform his contract, and no reasonable excuse is offered for such neglect. When the party who is to perform a condition, wholly neglects to perform the same—pays no attention to the stipulations on his part, and drives the other party to enforce the forfeiture, he can have but little claim to the interference of a court of equity. He ought not to be permitted to lie by, and see whether it will be most for his advantage to fulfil or neglect to fulfil his contract, and ask relief from the consequences of his neglect, when he sees it most for his advantage to have the contract executed. The cases on this subject are collected and commented upon by Chancellor Kent, in the case read from Johnson's Chancery Reports. In this case, the orator asks to be relieved from a forfeiture, occasioned by his neglect to perform the conditions on his part, inserted in the bond of the defendant, Yaw.— If there was any reasonable excuse for not performing them,—if he was prevented by inevitable accident, or if there are any other considerations which, according to the principles adopted in a court of chancery, entitle him to this relief, they should have been stated in the bill. Nothing is presented as an excuse for his neglect; but on the contrary, it appears to have been a case of gross negligence on his part. He enters into possession—pays but $34, but about one-sixth of the purchase money—fails to pay the first note in 1828—the second, in 1829—compels the defendant, Yaw, to commence an action of ejectment, and take possession; and after a lapse of six years, now seeks to compel the defendant to account for the rents and profits of the land, and convey the same to him, when he shall hereafter pay the sum due. There are no equitable considerations set forth in this bill, to entitle the orator to this relief. It is however urged, that there are reasons why this has been

46

WINDHAM,
February,
1835.

White
vs.
Yaw et al.

delayed, and why the orator should be entitled to this relief, which can be shown in evidence.   We can only look to the bill itself: If there are reasons of this kind,—if there are circumstances to show this court why the orator should have the relief asked for—be restored to the possession of the land, and have a conveyance decreed to him, after this lapse of time, they should be stated in the bill. But a party cannot exhibit a bill in court stating no equity, and rely on supplying this want of equity, by his proof.

It is further urged in this case, that the defendant retains his notes; but it is not stated that he holds them against the will of the orator, or that the orator has ever applied for them, or that the defendant has taken any steps, or is about to take any steps to enforce a collection of them; and it may be questioned whether the defendant can pursue these notes, having so far taken the forfeiture as to sue for, and recover the land.   If the condition of the bond had been to convey, on payment of the money, without taking any notes, the effect would have been the same as between these parties.   But if the defendant can, and ever should attempt to enforce the collection of these notes, or treat them as evidence of, or security for a debt due to him from the orator, it may be considered as waiving the performance, on the part of the orator, of the condition to have been performed by him, and let him in to his equitable claim on the land, and in fact to the relief which he now asks for. But there is nothing stated in this bill, either as an excuse for not paying the money upon the notes, when they became due, or before the recovery in ejectment, and for suffering this length of time to elapse before taking any measures to pay the sum due to the defendant; and it would be both unjust and inequitable, when no other circumstances are shown, to treat the defendant, who was in a measure compelled to sue for, and recover the land in ejectment, as a bailiff and receiver of the rents and profits to account to the orator.

The demurrer must be allowed, and the bill dismissed with cost.