# WARREN RICE'S ASSIGNEES *v.* MERRITT C. HULETT.

### *Chattel mortgage by parol. Possession. Insolvency.*

1. A loan made upon the parol agreement that the creditor may take and hold possession of the debtor's stock of goods as security, constitutes a mortgage valid between the parties, although the creditor did not take such actual possession as would protect him against third persons.

2. When the creditor subsequently and before the commencement of insolvency proceedings takes actual possession of the property, that possession relates back to the time of the first giving of the mortgage in determining the rights of the creditor and assignee.

3. The creditor will acquire title to goods incorporated with the stock in place of those sold between the date of the mortgage and the taking possession.

Action on the case by the plaintiffs as assignees in insolvency of Warren Rice for the value of a stock of goods. Heard upon referee's report at the September term, 1890, Taft, J., presiding. Judgment for the plaintiffs.

Exceptions by the defendant.

Rice was adjudged an insolvent, November 19, 1888. The plaintiffs claimed that the defendant took a transfer of these goods October 25, 1888, in satisfaction of a pre-existing debt, having reasonable cause to believe that Rice was insolvent. The defendant claimed that he bought and took possession of the goods, July 2, 1888, and ever after remained in possession of them, although Rice was about the store and assisting in its management. In reference to these claims the referees found as follows:

"It was claimed by the defendant that he became the owner of said stock of goods in the following manner, viz: That he purchased the same of said Rice on the 2nd day of July, 1888, for

Rice's Assignees *v.* Hulett.

the sum of two thousand dollars; that he paid said sum at about that date and took possession of said stock, and that he had remained in possession thereof as the owner thereof ever since, until his sale of them, as hereinbefore stated. In regard to this claim we find that the defendant did advance to Rice, on or about July 2, 1888, the sum of two thousand dollars; that by agreement betweeen him and Rice, Rice remained in the store, conducting the business therein until October 25, 1888; that about the middle of July, 1888, circulars marked Ex. B and Ex. C, which are referred to, were issued and sent to the customers of said store; that the defendant was in the store and at times waited on customers, between July 2, 1888, and October 25, 1888; that the policy of insurance on the stock of goods was on July 2, 1888, transferred to the defendant and remained in him until October 30, 1888, when it was transferred by him to his assignees of the stock; that during the time from July 2, 1888, to October 25, 1888, Rice had the principal charge of said store and stock, his sign remaining unchanged there; that on October 25, 1888, the defendant paid to said Rice the further sum of three hundred dollars, and that said Rice then left said store and the defendant then took exclusive possession and control of said stock of goods."

"Upon all the evidence we find that Warren Rice was in fact insolvent during the whole year 1888; also that the defendant did not acquire the absolute right and title to said stock of goods until the 25th day of October, 1888, when Rice surrendered to him all possession and control of the same. Although the testimony is conflicting and somewhat unsatisfactory, we believe that the transaction of July 2, 1888, was a loan by the defendant to Rice upon the security of this stock; that three hundred dollars of said loan was paid by Rice to defendant during July and August, 1888, and that the three hundred dollars paid by the defendant to Rice, October 25, 1888, was really a paying back to Rice of these payments made in July and August. We find that during the time from July 2, 1888, to October 25, 1888, the business of said store was conducted, with the assent of the defendant, by Rice, as if it was his own business.

We find that when said transaction of the transfer of said stock to the defendant was consummated, on the 25th day of October, 1888, the said Rice knew himself to be insolvent, and intended thereby to grant a preference to said defendant, and that the defendant at that time had reasonable cause to believe that said Rice was insolvent, and that said transfer was in fraud of the laws relating to insolvency."

Rice's Assignees *v.* Hulett.

*George E. Lawrence* and *F. S. Platt*, for the defendant.

The transaction constituted a mortgage:

*Ward* v. *Sumner*, 5 Pick. 59 ; *Blodgett* v. *Blodgett*, 48 Vt. 32 ; *Connor* v. *Carpenter*, 28 Vt. 237 ; *Coty* v. *Barnes*, 20 Vt. 78 ; *Atwater* v. *Mower*, 10 Vt. 75.

It was valid between the parties though not in writing.

Jones Ch. Mort. § 2.

The fact that the defendant suffered Rice to conduct business does not affect the case so long as he took possession before the rights of third parties intervened.

*Mitchell et al.* v. *Black et al.*, 6 Gray 100.

If a written mortgage had been taken when this was, and recorded when possession under this was taken, it would have been good.

*Gilbert* v. *Vail*, 60 Vt. 261. ·

The taking possession was equivalent to record.

Bump. Bk. 506 ; *In re* Burnett C. L. N. 366 ; *Mitchell* v. *Black*, 6 Gray 100.

The taking possession relates back to the original transaction.

*Peabody* v. *Landon*, 61 Vt. 329.

*F. Potter* and *J. C. Baker*, for the plaintiffs.

The defendant did not take possession of these goods until October 25, fifteen days before the adjudication of insolvency, hence he acquired no title to them until then.

*Farnsworth* v. *Shepherd*, 6 Vt. 521 ; R. L. s. 1820 ; *Collender Co.* v. *Marshall*, 57 Vt. 232.

When he did then take possession he knew that Rice was insolvent. Hence the conveyance was in fraud of the insolvent law.

The opinion of the court was delivered by

TYLER, J. The law has long been settled in this state

that to render a sale of personal chattels valid as against creditors, there must be a visible, substantial change of possession ; but as between the parties to the transaction the property in such chattels may pass by bargain and sale, for a sufficient consideration without a delivery. This rule, requiring a change of possession, is applicable to a mortgage of chattels ; yet an unrecorded mortgage is valid between the parties thereto. R. L. 1966 ; *Gilbert* v. *Vail*, 60 Vt. 261. So the giving of security upon chattels, without delivery, which is in effect a mortgage at common law, may be operative and valid between the mortgagor and the mortgagee, though not in writing. Jones Chat. Mort. Sec. 2.

In this case we must construe the expression in the report of the referees, that they believed that the transaction of July 2d, 1888, was a loan by the defendant to Rice upon the security of this stock of goods, as a finding of that fact. In their supplemental report they expressly find that it was the understanding between the defendant and Rice that the former should hold the goods as security for his advance of two thousand dollars.

There is no finding of fraud in fact nor of an intent by the defendant and Rice, or either of them, to defraud the latter's creditors, while it is found that the defendant advanced two thousand dollars to Rice on the goods, which, by the agreement between them, the defendant was to hold as security. .

The transaction of July 2d must be regarded as in the nature of a mortgage between the parties to it, subject of course to be defeated by attaching creditors or innocent purchasers at any time before the defendant took the actual manual possession. But no such third persons in fact intervened prior to October 25th, when the defendant took possession of the goods by virtue of his right under his lien. His taking actual possession related back to the right of possession which he acquired July 2d, and therefore the act was not in contravention of the provisions of the insolvent law. When Rice was adjudged a bankrupt, November 10th, the defendant had, with Rice's consent, been in the actual possession of the goods fifteen days by virtue of the lien he acquired July 2d.

Rice's Assignees *v.* Hulett.

The case of *Peabody* v. *Landon*, 61 Vt. 318, is authority that the goods purchased and put into the store between the dates above named, passed to the defendant under his lien upon his taking possession thereof. *Chase* v. *Denny*, 130 Mass. 566.

In *Collender Co.* v. *Marshall*, 57 Vt. 232, Rowell, J., makes the question, whether at the time of the filing of the petition in bankruptcy the property could have been taken on execution against the debtor, the test of the assignee's right. If it could, it passed to him by the very terms of the statute. R. L. 1820. If it could not, the converse must be true, that it would not have passed to the assignee. Applying this rule, the goods in controversy, on November 10th, had passed beyond the reach of Rice's assignee in insolvency and beyond the operation of the insolvent law. This holding is in consonance with the decisions of the Massachusetts court in cases arising under a similar statute, and with the decisions of this court above referred to.

The assignee does not seek to recover an equitable interest which the estate may have in the goods, under section 1802 R. L., but brings this suit, claiming that the transfer of October 25th was fraudulent in law, and that the defendant acquired no property in the goods.

This claim cannot be maintained.

The other questions that have been discussed by counsel arise upon the defentant's exceptions to the admission of evidence by the referees, and are immaterial in the view that we have taken of the main question.

*Judgment reversed, and judgment for the defendant.*